UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Belinda Sanders,<br><br>   *Plaintiff*,<br><br>v.<br><br>Commonwealth Edison Company,<br><br>   *Defendant*. | No. 23 CV 15747<br><br>Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

    Belinda Sanders filed suit against her employer, Commonwealth Edison Company ("ComEd"), alleging violations of Title VII and the Age Discrimination in Employment Act, as well as the Illinois Human Rights Act. ComEd moves for summary judgment.[1] Because Sanders has presented no evidence that would allow a reasonable jury to find in her favor, the motion is granted.

**I.    Background**

    The court draws on the parties' Local Rule 56.1 statements to recount the facts, which are undisputed except where otherwise noted. [Dkts. 55, 65.] The court views the record in the light most favorable to Sanders. *See Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 801 (7th Cir. 2023).

    Sanders is a Black woman who was hired by ComEd in 2012 as a Senior HR Generalist, a position designated as level "E03" in ComEd's organizational structure. [Dkt. 55, ¶ 17; Dkt. 65, ¶ 1.][2] Her position was retitled Senior HR Business Partner in 2021, but it is undisputed that her job responsibilities remained more or less the same. [Dkt. 55, ¶ 18.]

    For most of her career, Sanders supported two field operations teams, including frontline bargaining unit employees responsible for utility pole and infrastructure work. [*Id.*, ¶ 19.] In her annual performance evaluations, Sanders received "extraordinary impact" in 2017 and 2018, the highest rating, and "meaningful impact" between 2019 and 2021, the second-highest rating. [*Id.*, ¶ 22.] The parties dispute whether leadership regarded Sanders's "professional range as

---

[1]    Sanders concedes that she did not exhaust her administrative remedies on her IHRA claim. [Dkt. 54 at 4.] Count Four is therefore dismissed.

[2]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

relatively narrow." [Dkt. 55, ¶ 23.] According to ComEd, for most of her career, Sanders supported two very similar departments and generally spent her time performing tactical tasks, meaning she "lacked broader exposure" to other ComEd components. Sanders disagrees with this characterization, pointing to the testimony of Charles Davis, one of her supervisors who Sanders says regarded her as his "right hand person" and a "solid performer." [*Id.*]³

In September 2020, Sanders spoke with Vice President of HR Operations Susan Kutansky over concerns that she was passed over for opportunities because of her age (she was over 40) and race, and that "preferential treatment was given to non-minority employees." [Dkt. 55, ¶ 75.]

In early 2022,⁴ Sanders applied for one of two available positions as an E04-level Human Resources manager. [Dkt. 55, ¶¶ 56.] Minimum qualifications for the role included, among other things, a four-year degree in Human Resources or a related field; at least eight to ten years of strong HR operations experience or an HR specialist area; an ability to understand problems in the context of the bigger picture and influential relationships; and "[d]emonstrated ability to lead others in a traditional management, informal team or project basis." [*Id.*; Dkt. 65, ¶ 13; Dkt. 48-25 at 3, 48-26 at 3.]

The hiring process for each position was identical. Candidates interviewed with a panel of four ComEd employees: Elizabeth Bailey, the designated hiring manager; Destiny Woods; Bruce Davis; and Lisa Lopez. [Dkt. 55, ¶ 59, Dkt. 48-34, ¶ 23.] Applicants were evaluated based on interview performance, work experience,

---

³     On summary judgment, the court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires the moving party to file a statement of material facts with citations to specific supporting evidence in the record. L.R. 56.1(a)(2); *see also* L.R. 56.1(d). The opposing party must then respond to each fact by either admitting it or disputing it with its own supporting evidence. L.R. 56.1(b)(2); *see also* L.R. 56.1(e). The non-moving party may also file additional facts supporting its position. L.R. 56.1(b)(3). Sanders frequently attempts to dispute asserted facts by stating that the asserted fact "characterizes ComEd's internal operations" so she "is without knowledge to admit or deny," or by simply stating that the fact is disputed without citing to contrary evidence. Other times, she only disputes some aspects of the asserted fact and ignores others. [See *e.g.*, Dkt. 55, ¶¶ 9-15, 41, 44, 49-50, 56-57, 63-69, 74, 77.] To the extent she has failed to properly dispute the asserted fact, it is deemed admitted. L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Keeton v. Morningstar*, Inc., 667 F.3d 877, 884 (7th Cir. 2012) (where that party has failed to create a genuine dispute, the fact is deemed admitted).

⁴     Sanders's complaint discusses positions she wished to be considered for in 2019, 2020, and 2021, but her arguments in response to summary judgment and in her EEOC charge premise her failure-to-promote claims only on this 2022 candidacy.

annual reviews, and an assessment conducted by an outside agency. [Dkt. 55, ¶¶ 61–70.]

Three people interviewed for the two available positions: Sanders, Staci Paap and Jessica Allen, all of whom were employed at the time as Senior HR Business Partners with ComEd. [*Id.*, ¶ 59.] Paap and Allen are both white women under 40. [Dkt. 65, ¶¶ 15, 20.] Paap and Allen were supervised by Bailey, and Sanders was supervised by Davis. [Dkt. 55, ¶¶ 63, 66; Dkt. 65, ¶ 10.]

Sanders earned 4.0 points from the interview panel and 20 points on the third-party assessment. [Dkt. 55, ¶¶ 65–70; Dkt. 48-39.] Paap earned 3.6 points from the interview panel and 21 points on the third-party assessment. [Dkt. 55, ¶¶ 62-63; Dkt. 48–39.] Allen earned 4.6 points from the interview panel and 22 points on the third-party assessment. [Dkt. 55, ¶¶ 65–66; Dkt. 48-39.][5] Bailey, with input from the panel members, ultimately recommended Allen and Paap for the two positions. [Dkt. 55, ¶¶ 60, 71.]

Bailey spoke with Sanders to share her decision, but the parties dispute what was said. Sanders testified that she asked Bailey why she was being "targeted." [*Id.*, ¶ 77.] Sanders also testified that she asked Bailey why her career trajectory was different from Paap's and Allen's, and though Sanders did not use the word discrimination, she relayed her impression that she was being targeted as a Black woman over the age of 40. [*Id.*] Bailey remembers it differently. According to her, Sanders never referred to race or age during the conversation, nor did Sanders ever mention her conversation with Susan Kutansky in the fall of 2020. [*Id.*] Bailey maintains she was unaware of any discrimination complaints by Sanders until this lawsuit. [*Id.*]

After Bailey informed Sanders she had not been selected for the position, Sanders agreed to a lateral transfer that supported ComEd's Care Center, a unit within the Customer Operations department. [*Id.*, ¶ 36.] In this role, Sanders provided direct support to the Vice President of Customer Relations, which Sanders characterizes as a consolation prize after being passed over for the manager role. [*Id.*]

In July 2022, Sanders initiated a charge of discrimination with the Equal Employment Opportunity Commission alleging race and age discrimination, as well as retaliation. [Dkt. 65, ¶ 14.] This lawsuit followed.

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[5]   Sanders points to no evidence disputing these scores, so they are deemed admitted. [Dkt. 55, ¶¶ 62–63, 65–66, 69–70.]

3

matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The court construes the evidence in the light most favorable to the non-moving party, giving him the benefit of all reasonable inferences. *Lesiv v. Illinois Central Railroad Co.*, 39 F.4th 903, 911 (7th Cir. 2022). Defeating summary judgment requires evidence, not mere speculation. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).

### III. Analysis

#### A. Discrimination Under Title VII and the ADEA

Count One alleges race discrimination based on the failure to promote Sanders to the E04-level Human Resources manager in 2022. Count Two alleges that the failure to promote also violated the ADEA. The Seventh Circuit applies the same analysis to claims under Title VII and the ADEA. *See David v. Bd. of Tr. of Cmty. Coll. Dist. No., 508*, 846 F.3d 216, 225 (7th Cir. 2017). A plaintiff seeking to recover for disparate treatment under these statutes must prove at trial, by a preponderance of the evidence, that their age or race caused the challenged adverse employment action. *Carson v. Lake Cty., Indiana*, 865 F. 3d 526, 532 (7th Cir. 2017).

The ADEA extends protection to workers age 40 or older, 29 U.S.C. § 631(a), making it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." § 623(a)(1). Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates Title VII if it "intentionally relies in part" on an individual employee's membership in a protected class when the employee makes an adverse employment decision. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659 (2020). Put differently, "if changing the employee's" sex or other protected characteristic "would have yielded a different choice by the employer," then "a statutory violation has occurred." *Id* at 659–60.

Here, the parties agree that Sanders is a member of a protected class based on her race (Black) and age (over 40), and that she suffered an adverse employment action—not being promoted to the HR manager role. They dispute only causation. At summary judgment, the question is "'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] caused the [] adverse employment action.'" *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Nigro v. Ind. Univ. Health Care Assocs.*, 40 F.4th 488, 491 (7th Cir. 2022).

A plaintiff may either "prove discrimination in a holistic fashion" under *Ortiz*, or rely on the *McDonnell Douglas* burden-shifting framework, "which gives the plaintiff the initial burden to establish a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual." *Wince*, 66 F.4th at 1040 (cleaned up); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Sanders's arguments sound in both *McDonnell* and *Ortiz*, so the court considers both. They fail because she cannot establish a prima facie case, nor, in any event, does she provide evidence of pretext.

### 1. No Prima Facie Case of Discrimination

*McDonnell Douglas* first requires the plaintiff to show that she was (1) a member of a protected class, (2) qualified for the position, (3) rejected for the position, and (4) that the position was given to a person outside the protected class who was similarly or less qualified. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). Here, Sanders is Black and over the age of 40, she was qualified for the manager position, and she did not receive it. Paap and Allen, who are both white and under 40, received the promotions.

ComEd argues that Sanders cannot satisfy the fourth element because Paap and Allen were not similarly situated to Sanders. [Dkt. 47 at 22–23.] To be similarly situated, employees must be "directly comparable in all material respects" but "need not be identical in every conceivable way." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) (internal quotations omitted). "'In the usual case a plaintiff must show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012)). This is not "'a hard and fast test, and there is no magic to these considerations.'" *McDaniel*, 940 F.3d at 369 (quoting *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018)).

All three women were Senior HR Business Partners with ComEd at the time they applied for the manager role, and Paap and Allen were promoted by Bailey according to the same promotion criteria, which cuts in favor of similarity. Still, Sanders reported to Charles Davis while Paap and Allen reported to Bailey, which would not allow a factfinder to conduct a "meaningful comparison." *Id.*

## 2. Insufficient Evidence of Pretext

Even assuming that Sanders could establish a prima facie case, ComEd has offered a nondiscriminatory explanation for the employment action it took. The decisionmaker, Bailey, determined that Sanders had "narrower and less varied experience within ComEd" than Allen and Paap, and thus they were better suited for the role. [Dkt. 47 at 20, 23.] Relying on Bailey's assessment, ComEd explains that Sanders had experience working with unionized and field organizations, but not corporate client groups—something that both Paap and Allen had. [*Id.* at 11–12.] It also notes that Sanders's "meaningful impact" performance reviews between 2019 to 2021 were not as strong as the other candidates. Allen's ratings went from "meaningful impact" to "extraordinary impact" in 2021, and Paap received "extraordinary impact" ratings in each of the three years preceding the opening. [*Id.* at 21; Dkt. 55, ¶¶ 63, 65.][6]

"An employer's genuine belief that another candidate's vision for the organization or skillset makes them better suited for the job is a legitimate, nondiscriminatory hiring rationale." *Cunningham v. Austin*, 125 F.4th 783, 789 (7th Cir. 2025). The question that remains, then, is "whether there is sufficient evidence for a reasonable jury to conclude that the explanation is pretext for illegal discrimination." *Upchurch v. Indiana*, 146 F.4th 579, 587 (7th Cir. 2025).

Pretext is defined as a "dishonest explanation, a lie rather than an oddity or an error." *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024). Even if an employer's reason for some employment decision is "inaccurate, unfair, foolish, trivial, or baseless," the reason is still not pretext if "honestly believed." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023) (cleaned up). Proving pretext requires a plaintiff to "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence." *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 914 (7th Cir. 2025) (internal citation omitted); *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). Under *Ortiz*, the court looks at all the evidence together and asks simply "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. 834 F.3d at 765; *see also Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022) (the court assesses the evidence as a whole, rather than asking whether any piece of evidence proves the case itself). A plaintiff bears the burden of proving her employer's stated reasons were false. *Cunningham*, 125 F.4th at 790.

Sanders argues that neither Paap nor Allen met the "minimum requirements" to even be "placed in the interview pool." [Dkt. 54 at 6-8.] She argues that Paap and

---

[6] Sanders points to no evidence disputing these annual ratings, so they are deemed admitted. [Dkt. 55, ¶¶ 63, 65, 70.]

Allen's relevant human resource experience began in mid to late 2014, meaning that, as of January 2022, each woman had only seven years of experience—one short of the requisite eight. [Dkt. 54 at 8–9; Dkt. 65, ¶¶ 13, 17, 22.] She also maintains that Paap lacked strong relevant HR experience, and that neither Allen nor Paap demonstrated knowledge of applicable employment laws and regulations, which the job description listed, and which Sanders had. [Dkt. 54 at 7–9.]

This, however, does not support an inference of pretext because it does not suggest that ComEd's explanation for promoting Paap and Allen is a mask for illegal discrimination. *Vassileva*, 118 F.4th at 874. Even taking as true that Paap and Allen did not strictly satisfy certain hiring criteria, this does not call into question the *sincerity* of ComEd's decision to promote them over Sanders. "To show pretext, a plaintiff must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Tyburski v. City of Chicago*, 964 F.3d 590, 599 (7th Cir. 2020) (internal citation omitted). ComEd may have technically erred in allowing Paap and Allen to apply for the role notwithstanding their less than eight years of relevant experience, "but even then, error is not enough to show pretext." *Vassileva*, 118 F.4th at 874. Nothing about this evidence suggests that ComEd's explanation for the decision not to hire Sanders was discriminatory as opposed to merely inaccurate. *Buchanan v. Commonwealth Edison*, 2025 WL 963920, at *5 (N.D. Ill. March 31, 2025) ("absent evidence that ComEd's errors were actually more than honest mistakes, the evidence does not give rise to a reasonable inference of discrimination.")

Sanders also suggests that she was better qualified than Paap and Allen. [Dkt. 54 at 6–7.] She notes that she "out interviewed Paap" and that her resume, skills, and education "for sure make Sanders the better qualified individual." [*Id.* at 6.] For a disparity in qualifications to support an inference of pretext, however, Sanders's credentials must "be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cunningham*, 125 F.4th at 790 (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir. 2002). "This is a high evidentiary bar." *Id.* at 790 (internal citation omitted).

Here, ComEd points to unchallenged evidence from Bailey that Allen (a) previously worked in one of the departments that the manager position would support; (b) had corporate side experience; (c) scored the highest on the third-party assessment and the interview rating; and (d) had a 2021 performance review rating of "extraordinary impact." [Dkt. 55, ¶¶ 64–66.] Bailey also concluded that Paap (e) had field experience and experience with regulatory, government affairs and nuclear generation operations; (f) scored one point higher on the third-party assessment than Sanders; and (g) had "extraordinary impact" performance reviews for each of the three years before applying for the role. [*Id.*, ¶¶ 61–63.]

7

Sanders, on the other hand, spent the preceding ten years supporting only union and field operations teams,[7] [*Id.*, ¶ 19], and received only "meaningful impact" performance reviews between 2019 and 2021 [*Id.*, ¶ 22.] Though she scored higher than Paap on the interview, she scored lower than Paap on the third-party assessment. Because a "reasonable person could have selected [Paap and Allen] for the [] position," the difference in credentials does not support an inference of pretext. *Cunningham*, 125 F.4th at 790.

Sanders makes much of the fact that one member of the interview panel, Destiny Woods, testified that "Paap was the least impressive of the three candidates." [Dkt. 54 at 7 (citing Dkt. 48-10 at 7).] It is true Woods testified that she thought Sanders performed well during the interview. [Dkt. 48-10 at 6.] But it is undisputed that Woods was one of four panel members, and that interview performance was but one consideration (alongside work experience, annual performance reviews, and the third-party assessment). [Dkt. 55, ¶¶ 59–70; Dkt. 48-34, ¶ 28.] Nor does Sanders explain how Woods's testimony that Paap was the least impressive interviewee raises an inference of discrimination based on race or age. "When an employer honestly believed it promoted the best candidate, its reasoning is not pretext, even if its decision was inaccurate, unfair, . . . foolish, trivial, or baseless." *Cunningham*, 125 F.4th at 790 (citing *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023)).

Sanders also maintains that "several employees of ComEd have noticed a pattern of African Americans/Blacks and those over 40 not getting promoted at the rate in which their White counterparts are being promoted." [Dkt. 54 at 9; Dkt. 65, ¶ 31.] She points to declarations from two former ComEd employees, Briana Bryant and Jennifer Shaw, who worked in human resources and who each resigned from ComEd due, at least in part, to witnessing racially motivated disparate treatment based on age and race. [Dkt. 56-7, ¶ 5; Dkt. 56-8, ¶ 10.] Bryant's declaration states that she was promoted while employed at ComEd, and though she "did not experience direct discrimination," she perceived systemic racism within the organization. [Dkt. 56-8 ¶ 11.] Similarly, Shaw states that during her employment, "white applicants under 40 were consistently promoted over African American staff when positions became open," and that she was under the impression that openings were posted as mere formalities. [Dkt. 56-7 ¶ 5.] Sanders argues that these employees' experiences

---

[7] Sanders disputes ComEd's assertion that her professional range was narrow, *see* dkt. 55, ¶ 23, but it is undisputed that her roles supported "two very similar departments and [she] generally spent her time performing tactical activities," such that she "lacked broader exposure to other parts of the business." *Id.* Sanders cites Davis's deposition testimony that he relied on Sanders, considered her to be a solid performer, and her job responsibilities included supporting multiple operations and leaders at various levels. [Dkt. 48-8 at 12-13.] True, but Davis's testimony does not refute the assertion that Sanders's roles supported two similar departments—Distribution Operations and Transmission and Substations. [See also, Dkt. 55, ¶ 19.]

and opinions support an inference that ComEd treats younger, non-minority employees more favorably than their counterparts.

"'[B]ehavior toward or comments directed at other employees in the protected group' is one type of circumstantial evidence that can support an inference of discrimination." *Vega v. Chicago Park District*, 954 F.3d 996, 1005 (7th Cir. 2020) (quoting *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008)). "When decisions are made by different decision-makers, the relevance of the evidence depends on a variety of factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Gray v. Arrow Electronics, Inc.*, 2019 WL 1399945, at *3 (N.D. Ill. Mar. 28, 2019) (cleaned up) (citing *Hasan*, 552 F.3d at 529.)

To survive summary judgment, then, Sanders would need to demonstrate how these experiences permit a reasonable factfinder to infer *she* was the subject of discrimination. She has not done so. Neither Bryant nor Shaw provide testimony concerning Sanders's experience applying for the manager role. This is likely because Bryant's employment with ComEd ended in 2018 and Shaw's ended in 2021, [Dkt. 56-7, ¶ 1; Dkt. 56-8, ¶ 2], long before Sanders applied for the manager role in 2022. Second, neither declaration says anything about either woman being passed over for an HR role, or that Bailey was the relevant decisionmaker in those processes. *Gray*, 2019 WL 1399945, at *6 (plaintiff's argument about three employees terminated by different decision-makers over the course of a year was not evidence from which a reasonable factfinder could infer a discriminatory reason for plaintiff's termination). Their testimony simply does not create a reasonable inference of pretext to save Sanders's claims from summary judgment.

Thus, considering the evidence as a whole and eschewing any framework or formula, *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021), Sanders has not come forward with evidence that would allow a reasonable juror to find that ComEd's proffered justification was pretextual. Even putting all evidence in a pile, see *Ortiz*, 834 F.3d at 766, no reasonable jury could find in her favor. ComEd is entitled to summary judgment on the failure-to-promote claims.

### B. Retaliation Under Title VII

Count Three alleges retaliation under Title VII. To prevail on a Title VII retaliation claim, Sanders must prove (1) she engaged in activity protected by the statute, (2) she suffered an adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 705 (7th Cir. 2024). As to the first requirement, Sanders's complaint alleges that she engaged in protected activity in September 2020 when she spoke with Susan Kutansky about vacant leadership positions listed in an HR organizational chart and expressed "concern and observation that the process detailed appeared to exclude

minority applicants in favor of hand-picked white employees." [Dkt. 7, ¶¶ 18–19.] Around this same time, Sanders also spoke with her supervisor, Charles Davis, about not progressing within ComEd because of her race (though not her age). Thereafter, Davis testified that he spoke with Kutansky and Lisa Lopez about these concerns. [Dkt. 55, ¶ 76; Dkt. 48-8 at 20-22.]

"'Protected activity' is 'some step in opposition to a form of discrimination that the statute prohibits.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)). Informal complaints can count. *Davis v. Time Warner Cable of S.E. Wisc., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011). Regardless of the form of the complaint, though, it "must be about the [challenged] discrimination." *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022). In other words, merely "complaining in general terms of harassment or discrimination, without specifying a connection to a protected class or providing facts to create such an inference, is insufficient." *Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). *See also Cole v. Bd. of Trs.*, 838 F.3d 888, 901 (7th Cir. 2016) (statutorily protected activity "requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.")

ComEd argues that Sanders's conversations with Kutansky and Davis do not constitute protected activities because she never "used the word discrimination" and could not recall what words she used in reference to race or age. [Dkt. 47 at 29.] Even so, testimony exists that Sanders complained of preferential treatment toward non-minority and younger employees, so her statements could constitute protected activities, even if she did not use the word "discrimination." [Dkt. 55, ¶ 75.] Viewed in a light most favorable to her, there is at least a question of fact as to whether the complaints were sufficiently detailed to qualify as protected activities.

Regardless, Sanders has failed to demonstrate a causal connection between the complaints and the failure to promote. To establish causation, Sanders must "offer evidence that a retaliatory motive was a but-for cause of the challenged employment action." *Vavra*, 106 F.4th at 706 (cleaned up). Sanders may point to circumstantial evidence, such as "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Lewis*, 36 F.4th at 761. "Ultimately, the key question is whether a reasonable juror could conclude that there was a causal link between the protected activity or status and the adverse action." *Id.* (cleaned up).

Sanders's arguments on this score are, at best, undeveloped. She says that her complaint "about bias in the promotion process was the direct cause of her multiple terminations,"[8] and that the complaints must have made their way to "senior

---

[8] Sanders was never terminated and is still employed at ComEd.

10

leadership", as evidenced by Davis's testimony that "he notified [others] of Sanders complaints." [Dkt. 54 at 13–14.] Though the Seventh Circuit no longer evaluates evidence by labeling it "direct" or "indirect,"—it is evaluated together as a whole under *Ortiz*,—causation may be shown with evidence akin to an overt admission of animus. *O'Leary*, 657 F.3d at 630 ("direct evidence [] would entail something akin to an admission by the employer "I'm firing you because you had the nerve to accuse me of sex discrimination!") (cleaned up). Sanders points to no such evidence.

Her arguments are insufficient for at least two reasons. First, it is undisputed that the hiring manager, Bailey, was unaware that Sanders had complained of discrimination. [Dkt. 55, ¶ 77 (not disputing that Sanders never referred to a conversation with Kutansky when speaking with Bailey, and not disputing Bailey's unawareness of prior discrimination complaints.)] It follows that Bailey could not have acted with retaliatory animus. *Lewis*, 36 F.4th at 762 (citing *Tyburski*, 964 F.3d at 603 (retaliation based on protected activity, requires that the actor have knowledge of that protected activity); *Nagle v. Vill. Of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) ("In order to establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory; it is not sufficient that an employer could or even should have knowledge about an employee's complaint.") (cleaned up).

Second, even if Bailey had been aware of the complaints to Kutansky, Sanders complained in the fall of 2020 and applied for the manager position in January 2022. Though no bright line rule exists to show a causal link, *Baines v. Walgreen Co.*, 863 F.3d 656, 666 (7th Cir. 2017), an inference of retaliation "can be weakened by a lengthy time period between the protected activity and the alleged retaliation." *Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017). Here, well over a year passed between Sanders's complaints to Kutansky and her application for the manager position. Absent additional evidence supporting a causal link, that is too long of a gap to support a reasonable inference that the decision not to promote was retaliatory. *See Lesiv*, 39 F.4th at 920. Sanders failed to provide any such evidence here.

No reasonable factfinder could conclude that Sanders's complaint was the "but-for" cause of ComEd's decision not to promote her, so the retaliation claim fails.

### IV.    Conclusion

ComEd's motion for summary judgment is granted.

Enter: 23 CV 15747
Date:  October 6, 2025

_____
Lindsay C. Jenkins
United States District Court Judge